42 F.3d 1399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CHEMSTAR, INC., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant,
and
Genstar Corporation; National Union Fire Insurance Company
of Pittsburgh, PA.; Industrial Insurance Company of Hawaii,
Ltd.; American Home Assurance Company; Employers Insurance
of Wausau, United Insurance, Defendants.
CHEMSTAR, INC., Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE CO.; Genstar Corporation;
National Union Fire Insurance Company of Pittsburgh, PA.;
Industrial Insurance Company of Hawaii, Ltd.; American Home
Assurance Company; Employers Insurance of Wausau; United
Insurance, Defendants-Appellees.
CHEMSTAR, INC., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE CO.; Genstar Corporation;
National Union Fire Insurance Company of Pittsburgh, PA.;
Industrial Insurance Company of Hawaii, Ltd.; American Home
Assurance Company; Employers Insurance of Wausau, Defendants,
and
United Insurance, Defendant-Appellant.
CHEMSTAR, INC., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE CO.; Genstar Corporation;
National Union Fire Insurance Company of Pittsburgh, PA.;
Industrial Insurance Company of Hawaii, Ltd.; American Home
Assurance Company; United Insurance, Defendants,
and
Employers Insurance of Wausau, Defendant-Appellant.
CHEMSTAR, INC., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE CO.; Genstar Corporation;
National Union Fire Insurance Company of Pittsburgh, PA.;
Industrial Insurance Company of Hawaii, Ltd.; Employers
Insurance of Wausau; United Insurance, Defendants,
and
American Home Assurance Company, Defendant-Appellant.
 Nos. 93-55555, 93-55557, 93-55558, 93-55560 and 93-55561.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided Nov. 16, 1994.
 
 Before: O'SCANNLAIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This memorandum disposition addresses certain Phase II issues not discussed in the separate opinion filed concurrently herewith. An additional memorandum disposition, filed concurrently herewith, deals with the Phase I issues.
 
 
 3
 * In its Phase I Judgment on Special Jury Verdict, the district court awarded Chemstar, Inc. ("Chemstar") compensatory damages for amounts paid to settle the Friedman claim and to defend plaster pitting claims after Liberty had withdrawn its defense. Later, in an October 26, 1992 order, the district court found that Liberty Mutual Insurance Company ("Liberty") had exhausted its $2 million coverage limit on April 17, 1991. Liberty asserts that the district court improperly ordered it to pay for the Friedman settlement and Chemstar's defense costs, sums exceeding Liberty's coverage limits.
 
 
 4
 Liberty's argument fails. Liberty entered into a stipulation in October 1992 in which it agreed that the district court's October 26, 1992 finding would not be binding on Chemstar. Liberty argues that this stipulation barred it from asserting exhaustion only on the basis of the district court's October 26, 1992 disposition of its summary judgment motion. According to Liberty, the stipulation does not prevent it from asserting exhaustion based upon the district court's March 10, 1993 declaratory judgment.
 
 
 5
 We disagree. The March 10, 1993 judgment did not make an independent finding as to the date that Liberty exhausted its coverage but, instead, simply incorporated the finding of the October 26, 1992 order. Under the circumstances, and given the fact that Chemstar surrendered potentially valuable claims against Liberty in exchange for the stipulation, we find Liberty's proffered reading of the stipulation to be untenable.
 
 II
 
 6
 On December 21, 1992, the district court granted partial summary judgment in favor of Liberty against American Home Assurance Company's ("American") second amended counterclaim and cross-claim, finding that American could not assert waiver and estoppel claims based on Liberty's breach of its duty to defend Chemstar. The district court later required American to pay for all of Chemstar's covered defense and settlement costs exceeding Liberty's $2 million coverage limits. American challenges these decisions.
 
 
 7
 American asserts that Liberty has lost its right to assert exhaustion as a defense to coverage because it abandoned Chemstar's defense in bad faith after first defending without a reservation of rights. We disagree. The mere fact that Liberty defended Chemstar without a reservation of rights did not cause Liberty to waive, or to become estopped from asserting, its policy limits as a defense to coverage. "While the defense of [an] action by the insurer may constitute a waiver of defenses by it, it does not rewrite the policy so as to remove the maximum of the coverage provided." 14 Couch on Insurance 2d Sec. 51:93, at 595 (1982). Liberty's bad faith breach of its duty to defend Chemstar does not avail American. Liberty has compensated Chemstar for all losses that its actions caused Chemstar, and American must pay only those settlement and defense costs in excess of Liberty's policy limits. Further, despite ample opportunity afforded by the district court, American never has demonstrated how it has been directly injured by Liberty's conduct. Under these conditions, we agree with the district court's finding that Chemstar had no claim against Liberty to assign to American or to which American could become subrogated. See Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1561 (9th Cir.1991) (no waiver where no prejudice); Valentine v. Aetna Ins. Co., 564 F.2d 292, 297 (9th Cir.1978) ("[W]hen a loss cannot be causally related to some alleged breach of duty on the part of the defendant, then neither a plaintiff, nor his insurer through equitable subrogation, can have a cause of action against the defendant.").
 
 
 8
 Finally, American argues that Liberty breached its duty of good faith and fair dealing to American because it waited until after the district court's July 23, 1992 summary judgment to assert that plaster pitting losses should be allocated to one, rather than three, policy periods. The district court properly characterized this argument as "frivolous." Liberty properly reallocated the plaster pitting losses from three policy years to one policy year as a result of the district court's rulings.
 
 III
 
 9
 In its July 23, 1992 summary judgment, the district court held that National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National") was not required to share Chemstar's defense costs with Liberty because National's policy did not cover any of the plaster pitting damage. Liberty challenges this decision, arguing that, because National was potentially liable for coverage at the outset of this litigation, it had a duty to defend Chemstar.
 
 
 10
 The district court's apportionment of defense costs was correct. "The costs of defense must be apportioned on the basis of equitable considerations not found in the insurers own contracts, since the insurance companies who must share the burden do not have any agreements among themselves." CNA Casualty of California v. Seaboard Sur. Co., 222 Cal.Rptr. 276, 288 (Cal.App.1986). "It is an accepted principle of California law that where two insurers cover the same risk, defense costs must also be shared between them pro rata in proportion to the respective coverage afforded by them to the insured." Id. at 289 (internal quotation omitted). Since National's policy afforded no coverage of Chemstar's losses, its pro rata share of Chemstar's defense costs was zero.
 
 IV
 
 11
 Liberty states that the district court improperly required it to pay a 10% post-judgment interest rate, rather than a 4.21% rate, in its February 10, 1992 Judgment on Special Jury Verdict (Phase I).
 
 
 12
 Liberty has raised this issue too late. First, because the district court awarded post-judgment interest as part of its Phase I judgment, Liberty should have argued this issue in its Phase I appeal. Instead, it raises the issue for the first time in its Phase II appeal. Second, Liberty failed to raise this issue with the district court. Because the appropriate interest rate is a question of fact not answerable from the record, we decline to consider the question for the first time on appeal. See In re Professional Inv. Properties of Am., 955 F.2d 623, 625 (9th Cir.), cert. denied, 113 S.Ct. 63 (1992).
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3